# UNITED STATES DISTRICT COURT
# FOR THE
# WESTERN DISTRICT OF WISCONSIN

**J.J.**, by and through his next friend,
Saleena Jackson; **K.D.**, by and through
her next friends, John Levy and Meranda
Davis; **C.M.**, by and through his next friend
Toinette Ducksworth; **R.N.**, by and through
his next friend Gloria Norwood, **M.S.,** by
and through his next friend Jolene Waupekanay;
**A.V.,** by and through his next friend Veronica
Rocha-Montejano; **M.R.,** by and through his next
friend Autumn Rodgers; **S.K.,** by and through her
next friend, Thomas Korn; and **A.P.,** by and
through her next friend, Louise Plaskey, for
themselves and all others similarly situated,

    Plaintiffs,

v.                                                         **Case No.: 17-CV-47**

**JON E. LITSCHER**, in his official capacity
as Secretary of the Wisconsin Department
of Corrections; **JOHN D. PAQUIN**, in his
official capacity as Administrator of
Division of Juvenile Corrections of the
Wisconsin Department of Corrections;
**WENDY A. PETERSON** in her official capacity
as Superintendent of the Lincoln Hills
School for Boys and the Copper Lake
School for Girls; **BRIAN GUSTKE**, in his official
Capacity as Director of Security for the Lincoln
Hills School for Boys and the Copper Lake
School for Girls,

    Defendants.

# ALL DEFENDANTS' BRIEF IN OPPOSITION TO
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendants, Jon E. Litscher, John D. Paquin, Wendy A. Peterson, and Brian Gustke, by their attorneys, Crivello Carlson, S.C., hereby respectfully submit this Brief in Opposition to Plaintiffs' Motion for Class Certification.

## INTRODUCTION

The Plaintiffs have failed to meet their burden of showing that the proposed class meets the requirements of Fed. R. Civ. P. 23. Specifically, the Plaintiffs cannot satisfy the "numerosity," "commonality," and "typicality" prerequisites under Rule 23(a)(1)–(3). Further, they cannot satisfy the necessary prerequisite under Rule 23(b)(2) pertaining to injunctive relief. In short, a close examination of Plaintiffs' claims reveals that an individual analysis of each Plaintiffs' circumstances and alleged constitutional deprivations is necessary to resolve this case. Thus, the Court is unable to answer any potential common questions of law in one stroke. Because the Court must address Plaintiffs' alleged constitutional deprivations on individual bases, class certification is not appropriate. Accordingly, Plaintiffs Motion must be denied.

## ARGUMENT

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of'" individually named parties. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Indeed, "[c]ertification as a class action can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011) (citing

1998 Advisory Committee Notes to Fed. R. Civ. P. 23(f)). Thus, a class "'may only be certified if the trial court is satisfied, *after a rigorous analysis*,'" that the applicable prerequisites of Rule 23 are satisfied. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160–61 (1982)) (emphasis added).

"Under Federal Rule of Civil Procedure 23, a district court has broad discretion to determine whether certification of a class is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Further, "the party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Id.* This means that the Plaintiffs must prove that they satisfy the statutory prerequisites under Fed. R. Civ. P. 23(a) and 23(b) and courts may look beyond the pleadings to determine if the burden is met. *In re Copper Antitrust Litigation*, 196 F.R.D. 348, 353 (W.D. Wis. 2000); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Ass'n*, 7 F.3d at 596 (citations omitted). Because the Plaintiffs cannot meet their burden in this case, the Court must deny their Motion for Class Certification.

I. **PLAINTIFFS CANNOT SATISFY THE NECESSARY PREREQUISITES UNDER FED. R. CIV. P. 23(a).**

Rule 23(a) states in relevant part:

> One or more members of a class may sue or be sued as representative parties on behalf of all members **only if**:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defense of the class . . . .

Fed. R. Civ. P. 23(a)(1)–(3) (emphasis added).

These three prerequisites comprise the first step in the class-certification analysis and are also respectively referred to as the requirements of "numerosity," "commonality," and "typicality." *See In re Copper*, 196 F.R.D. at 353.

The party invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class-action procedure have been satisfied. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). If one or more of the prerequisites listed under subdivision (a) are not met, then the action is dismissible under Fed. R. Civ. P. 23(c)(1). *See Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980), *cert. den'd*, 451 U.S. 914 (1981) (holding that none of the prerequisites under Rule 23(a) were met in an employment-discrimination suit where there was no indication that any other employee had ever been discriminated against in the same

way as the complainant). Here, because the Plaintiffs cannot satisfy any of the requirements under Rule 23(a)(1)–(3), their Motion must be denied.

### A. Plaintiffs cannot satisfy the "numerosity" requirement.

The "numerosity" requirement mandates that the proposed class be so numerous that it would be impracticable to join all of the affected parties. Fed. R. Civ. P. 23(a)(1). Although the Seventh Circuit has noted that as few as 40 potential class members could be sufficiently large to satisfy Rule 23(a), *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969), "the party supporting the class cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove that joinder is impractical for numerosity purposes," *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (quoting *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990)); Fed. R. Civ. P. 23(a)(1).

Here, there are nine named Plaintiffs representing a putative class of 165, which includes 145 boys incarcerated at Lincoln Hills School for Boys ("LHS") and 20 girls incarcerated at Copper Lake School for Girls ("CLS"). (Dkt. 13, Am. Compl. ¶ 212.) The Plaintiffs also allege that the class "consists of an unknown number of youth who will be incarcerated in those facilities in the future . . . ." (*Id.*) The speculative nature of the size of this class relating to unknown future inmates at LHS and CLS renders it inappropriate for certification. Plaintiffs concede that the number of future class members is "unknown"—a level of speculation by which the numerosity requirement cannot be fulfilled. *See* (Dkt. 13, Am. Compl. ¶ 212.)

Because the Plaintiffs cannot satisfy the "numerosity" requirement, their Motion must be denied.

> **B.     Plaintiffs cannot satisfy the "commonality" requirement.**
>
> > *1.     Commonality requires more than showing that class members suffered a violation of the same provision of law.*

Commonality requires the Plaintiffs to demonstrate that the class members "have suffered the same injury . . . ." *Gen. Telephone*, 457 U.S. at 157. Thus, analysis of the "commonality" requirement "'entail[s] some overlap with the merits of the plaintiff's underlying claim,'" and "often requires a precise understanding of the nature of the plaintiffs' claims." *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 550, 552 (7th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. at 351). "To demonstrate commonality for the purposes of Rule 23(a)(2) . . . a prospective class must show that its claims 'depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 351).

In *Wal-Mart*, the Supreme Court denied certification to a class of 1.5 million members represented by three named plaintiffs alleging that they were current and former Wal-Mart employees against whom Wal-Mart had discriminated on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 *et seq*. *Wal-Mart*, 564 U.S. at 344. Noting that the "crux" of the case was the commonality requirement, the Court explained that commonality requires more than merely showing that the purported class members "have all

suffered a violation of the same provision of law" because that mere showing does not necessarily give cause "to believe that all their claims can productively be litigated at once." *Id.* at 349–50.

Instead, the commonality analysis necessarily overlaps with the underlying merits of the plaintiffs' claims such that class certification should focus not on "'the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (emphasis in original) (quoting Richard A. Nagareda, Class Certification in the Age of the Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). In the instance of the Wal-Mart employees, resolving a Title VII discrimination claim hinges on "the reason for a particular employment decision," which means that the plaintiffs' class action effectively sought to litigate "millions of employment decisions at once." *Id.* at 350–51 (internal quotations omitted). The Court reasoned that "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question of *why I was disfavored*." *Id.* (emphasis in original). The Court therefore denied certification. *Id.*

In July, 2016, the Seventh Circuit relied on *Wal-Mart* in affirming decertification of a class represented by former and current detainees of the Cook County Jail who alleged in their § 1983 action against Cook County and its sheriff that "the level of dental care they received at the Jail demonstrated deliberate

7

indifference in violation of the Eighth and Fourteenth Amendments." *Phillips*, 828 F.3d at 543, 558. Just as in *Wal-Mart*, *Phillips* focused on the commonality requirement and the court emphasized the importance of analyzing commonality by looking at the plaintiffs' claims. *See generally id.*

After recounting the *Wal-Mart* decision, the *Phillips* court set forth the standards for deliberate indifference claims under the Eighth and Fourteenth Amendments, explaining that the plaintiffs would either have to show that (1) the defendants were deliberately indifferent to objectively serious medical conditions in isolated instances, or (2) the "systemic deficiencies" at the jail's healthcare facilities "rendered the medical treatment constitutionally inadequate for all inmates." *Id.* at 550–54 (internal quotations omitted). The Seventh Circuit agreed with the district court that the detainees' claims properly fell within the first category of deliberate indifference thus negating any "common question" because the inmates each presented "a different situation that involved a different type of dental pain, took place at a different time, involved different medical professionals and prison staff, and concerned a different alleged deficiency in the treatment process." *Id.* at 554–55.

Turning to the second category of deliberate indifference, the Seventh Circuit noted that although there may be an avenue to class-action certification by proving a systematic policy or practice that caused deliberate indifference, the detainees could do so only by presenting "classwide evidence" that the institution "'regularly provides a level of [care] that is so inadequate that it exposes *any* inmate . . . to a

8

substantial risk of serious harm.'" *Id.* at 557 (alterations and emphasis in original) (quoting *Parsons v. Ryan*, 754 F.3d 657, 680 (9th Cir. 2014)).  To that end, the Seventh Circuit adopted the district court's reasoning that the detainees failed to show commonality under the second category of deliberate indifference because the allegations and evidence did "not point to the type of systematic and gross deficiency that would lead to a finding that **all** detainees are effectively denied treatment." *Id.* (internal quotations and alterations omitted; emphasis added).  In short, the detainees did not "allege that the Jail ha[d] a specific policy that **directly cause[d]**" the claimed constitutional violations.  *Id.* at 558 (emphasis added).

Thus, under *Wal-Mart* and *Phillips*, the Plaintiffs must identify classwide evidence of policies or practices that cause their alleged constitutional deprivations.

> ### 2. *Plaintiffs have failed to identify classwide evidence of policies or practices that cause the constitutional deprivations alleged.*

At first blush, Plaintiffs' straightforward presentation of common questions of law appears to satisfy the commonality requirement.  However, a closer analysis of Plaintiffs' claims shows otherwise.  Plaintiffs bring the following causes of action: the use of restrictive housing and mechanical restraints constituting a failure to provide rehabilitative treatment in violation of the Fourteenth Amendment; the use of mechanical restraints and incapacitating agents constituting excessive force in violation of the Eighth and Fourteenth Amendments; the use of mechanical restraints and incapacitating agents constituting a failure to protect in violation of the Eighth and Fourteenth Amendments; the use of mechanical restraints and

9

restrictive housing constituting cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; and the use of strip searches constituting unreasonable search in violation of the Fourth and Fourteenth Amendments. (Dkt. 13, Am. Compl. ¶¶ 220–92.)

Based on their causes of action, Plaintiffs ask the Court to declare unconstitutional and enjoin any use of restrictive housing, mechanical restraints, and incapacitating agents in any situation other than "rare and temporary responses to prevent imminent and serious physical harm to persons . . . ." (Dkt. 16, Pls.' Mot. Prelim. Inj. at 1–2);[1] (Dkt. 13, Am. Compl. "WHEREFORE" ¶¶ B–C.) Additionally, they ask the Court to declare the use of strip searches unconstitutional in any context at juvenile facilities. (Dkt. 13, Am. Compl. "WHEREFORE" ¶ B.)

Thus, Plaintiffs effectively claim that any LHS and CLS policy is unconstitutional if it permits the use of restrictive housing, mechanical restraints, and incapacitating agents on any juvenile for any purpose other than to prevent imminent and serious physical harm to persons. Similarly, they effectively claim that any LHS and CLS policy is unconstitutional if it permits the use of strip searches on any juvenile for any purpose whatsoever.

An analysis of these claims under *Monell v. Dept. of Soc. Services of City of N.Y.*, 436 U.S. 658 (1978), crystalizes them as artificial and abstract common questions of law that cannot be answered in one stroke. *Monell* is the appropriate

---

[1] Plaintiffs would also allow the use of mechanical restraints "during transportation outside the institution . . . ." (Dkt. 16, Pls.' Mot. Prelim. Inj. at 1.)

10

analytical framework to determine commonality because Plaintiffs have sued Defendants in their official capacities, and "[a]ctions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008); (Dkt. 13, Am. Compl. ¶¶ 14–17.)

"[T]o prevail on a *Monell* claim, the plaintiff must establish (1) that he [or she] suffered a constitutional injury . . . and (2) that the [governmental entity] authorized or maintained a custom of approving the unconstitutional conduct." *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). To prove that one suffered a constitutional injury, the governmental entity's "custom or policy must deprive the claimant of his [or her] constitutional rights." *Petty v. City of Chicago*, 754 F.3d 416, 424–25 (7th Cir. 2014).

Plaintiffs have not provided legal authority holding that a juvenile's Eighth and Fourteenth Amendment rights are violated, *per se*, when restrictive housing, mechanical restraints, or incapacitating spray are used for any purpose other than to prevent imminent and serious physical harm to persons. Nor have Plaintiffs provided legal authority holding that a juvenile's Fourth and Fourteenth Amendment rights are violated, *per se*, when the juvenile is subjected to a strip search while placed at a juvenile institution.

Thus, in order to determine whether LHS and CLS policies that permit the alleged uses of restrictive housing, mechanical restraints, incapacitating spray, and strip searches caused a constitutional deprivation under *Monell*, the Court will first

be required to determine under what specific circumstances the use of restrictive housing, mechanical restraints, incapacitating spray, and strip searches deprives a specific Plaintiffs' constitutional rights.

Perhaps the best example of this is the Plaintiffs' claim that the uses of restrictive housing and mechanical restraints violate their Fourteenth Amendment rights to rehabilitation. (Dkt. 13, Am. Compl. ¶¶ 220–31.) Again, Plaintiffs have not provided evidence or authority showing that a juvenile's right to rehabilitation is violated, *per se*, if restrictive housing and mechanical restraints are used for any reason other than to prevent imminent harm. Thus, to determine when the use of mechanical restraints or restrictive housing in fact violates a juvenile's right to rehabilitation, it is necessary to first define when a specific juvenile's right to rehabilitation is violated.

"[J]uveniles placed in a correctional facility have a substantive due process right [under the Fourteenth Amendment] to individualized [rehabilitative] treatment." *Xiong v. Wagner*, 700 F.3d 282, 295 (7th Cir. 2012) (citing *Nelson v. Heyne*, 491 F.2d 352, 360 (7th Cir. 1974)). When the Seventh Circuit first recognized this substantive due process right in *Nelson*, it held that the right to rehabilitative treatment "includes the right to minimum acceptable standards of care and treatment for juveniles **and the right to individualized care and treatment**." *Nelson*, 491 F.2d at 360 (emphasis added). The *Nelson* court reasoned that "[b]ecause children differ in their need for rehabilitation, **individual need for treatment will differ**." *Id.* (emphasis added).

And because the individual needs for treatment differ among juveniles, the question of whether treatment meets the constitutionally acceptable amount of individualized care must be answered on individual bases. Thus, embedded within the test for determining whether the policies and practices at LHS and CLS unconstitutionally deprive rehabilitative care under the Fourteenth Amendment is the recognition that the appropriate provision of rehabilitative care must be viewed relative to each juvenile's needs. Thus, there is no way that this Court could decide in one stroke whether the restrictive housing and mechanical restraint policies or customs violate *all* juvenile's Fourteenth Amendment rights to rehabilitation. *See Wal-Mart*, 564 U.S. at 350–51; *Phillips*, 828 F.3d at 557; *Parsons*, 754 F.3d 657. Rather, whether the policies or practices at LHS and CLS concerning restrictive housing and mechanical restraints unconstitutionally impede all juveniles' rights to rehabilitative treatment must be answered on an individual basis, because one juvenile's rehabilitative needs may be affected differently by the use of restrictive housing and mechanical restraints than another. Thus, the commonality requirement cannot be satisfied under *Wal-Mart* and *Phillips*.

The same holds true for Plaintiffs' other claims. For instance, while Plaintiffs point out that the Wisconsin Administrative Code permits the use of incapacitating agents in circumstances aside from when staff or youth are in imminent danger, Plaintiffs fail to discuss how the enforcement of that policy has caused a constitutional deprivation under the Eighth and Fourteenth Amendments to support their excessive force and failure-to-protect claims. *See* (Dkt. 3, Mem.

13

Supp. Pls.' Mot. Class Cert. 10–11.) Excessive force claims dealing with "unnecessary and wonton infliction of pain" upon prisoners require showings of "*actual intent* or *deliberate indifference*," which include the subjective inquiry of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause harm." *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). This analysis cannot be dealt with on a classwide basis, as the Court would first need to inquire into each specific instance of alleged excessive force to identify the presence of actual intent or deliberate indifference.

In sum, Plaintiffs have not shown that any policies or customs at LHS and CLS are unconstitutional in and of themselves, as a matter of law. Plaintiffs' *Monell* claims therefore require individual inquiries into whether constitutional deprivations occurred, which necessarily entail case-by-case fact-finding and legal analyses not suitable for class-action litigation. *See, e.g.*, *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894–95 (N.D. Ill. 2000) (explaining that in many cases, courts bifurcate individual § 1983 claims from *Monell* claims because, in part, "[i]f the plaintiff fails to prove that he [or she] suffered a constitutional injury," that finding will usually bar the *Monell* claim). After that determination, the Court still needs to determine whether some policy or custom caused an individual's deprivation—an intrinsically case-specific analysis, as two of the same constitutional deprivations may or may not have been caused by a policy or custom.

Because Plaintiffs cannot show that the Court could resolve the constitutionality of using restrictive housing, mechanical restraints, incapacitating

14

agents, and strip searches, each in one stroke, the Plaintiffs cannot satisfy the commonality requirement. Because the Plaintiffs cannot satisfy the "commonality" requirement, their Motion must be denied.

### C. Plaintiffs cannot satisfy the "typicality" requirement.

This requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). To that end, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* (internal quotations and citations omitted).

For instance, in *Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 892–93 (7th Cir. 2012), the Seventh Circuit held that the district court did not abuse its discretion in determining that inmates failed to satisfy the "typicality" requirement where the plaintiffs claimed their Eighth and Fourteenth Amendment rights were violated because a change in the jail's procedure relating to distribution of medication did not include them in the group of inmates who were given exceptions to the changes. The Seventh Circuit quoted the lower court's explanation that "[c]laims of inadequate medical care by their nature require individual determinations, as the level of medical care required to comport with constitutional and statutory standards will vary depending on each inmate's circumstances, such as preexisting medical conditions." *Id.* at 893 (internal quotations omitted).

15

The same reasoning applies here. As explained above, inherent in Plaintiffs' claims are analyses requiring careful considerations of specific circumstances surrounding each alleged constitutional deprivation. While one named Plaintiff may have a valid claim for excessive force in relation to an instance where an incapacitating agent was used, that claim may not be typical of a class member's claim that an incapacitating agent was used for a constitutional reason other than to prevent imminent and serious physical harm to persons. Similarly, a named Plaintiff may not have a valid claim for failure to provide rehabilitative treatment because his or her individual needs have been met, while a class member has a valid claim. Several layers of factual inquiry and legal analysis are required to litigate Plaintiffs' claims, which shows the claims—while potentially borne of the same alleged constitutional violation—do not necessarily "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members." *De La Fuente*, 713 F.2d at 232. Because the Plaintiffs cannot satisfy the "typicality" requirement, their Motion should be denied.

## II. PLAINTIFFS CANNOT SATISFY THE NECESSARY PREREQUISITE UNDER FED. R. CIV. P. 23(b).

Even assuming for the sake of argument that the three prerequisites under Rule 23(a) are met, then the Court must determine whether at least one of the three subdivisions of Rule 23(b) is satisfied. *In re Copper*, 196 F.R.D. at 353. In this case, the Plaintiffs focus on subdivision (b)(2), (Dkt. 13, Am. Compl. ¶ 211), which states:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> 
> . . .

16

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . .

Fed. R. Civ. P. 23(b)(2).

"Subsumed in this rule are at least two independent requirements: The contemplated equitable relief must be (1) appropriate respecting the class as a whole and (2) final." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011) (internal quotations omitted). Part of the first inquiry necessarily involves a determination of standing—i.e., whether one of the named Plaintiffs has standing to bring a claim for equitable relief on behalf of the class members. *See, e.g.*, *Otero v. Dart*, 301 F.R.D. 276, 283–84 (N.D. Ill. 2013). Moreover, "[a]n injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability." *Kartman*, 634 F.3d at 893.

Here, Plaintiffs concede that not all of the named Plaintiffs are currently placed at LHS or CLS, and it is not clear from the allegations how long the named Plaintiffs will remain at LHS and CLS. *See* (Dkt. 13, Am. Compl. ¶ 125.) Despite this, the only relief sought in this lawsuit would apply prospectively. *See* (*id.* at "WHEREFORE" ¶¶ A–F.) Thus, Plaintiffs cannot prove that they have standing to sue for injunctive and declaratory relief on behalf of the class because the requested injunctive and declaratory relief might not have any effect on one or more of the named Plaintiffs. *See Otero*, 301 F.R.D. at 283–84. Thus, equitable relief would not prove to be final or appropriate for the entire class. *Id.* Rather, a prospective, equitable order entered by this Court would simply serve as the basis for or

17

evidence in future litigation by forcing LHS and CLS to operate under a court order into perpetuity based on allegations and claims brought by persons who may not benefit from the order. *See Kartman*, 634 F.3d at 893. Because the Plaintiffs cannot satisfy the necessary prerequisite under Fed. R. Civ. P. 23(b)(2), their Motion must be denied.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Plaintiffs' Motion for Class Certification be denied.

Dated this 5th day of May, 2017.

        CRIVELLO CARLSON, S.C.
        Attorneys for Defendants


        By:   *s/ Benjamin A. Sparks*
               SAMUEL C. HALL, JR.
               State Bar No.: 1045476
               BENJAMIN A. SPARKS
               State Bar No.: 1092405

**PO ADDRESS**:
710 North Plankinton Avenue
Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722
Email:    shall@crivellocarlson.com
           bsparks@crivellocarlson.com

**PROOF OF SERVICE – ELECTRONIC FILING**

The undersigned hereby certifies that this document was filed electronically this 5th day of May, 2017. Notice of this filing will be sent to counsel of record at the email addresses registered by them with the Court by operation of the Court's electronic filing system. If not registered with the Court, a copy of this document will be sent via U.S. Mail and/or email this date.

s/<i>Electronically signed by Linda M. Brent</i>