# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **J.J.,** by and through his next friend, Sakeena Jackson; *et al.*, for themselves and all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**Jon E. Litscher,** in his official capacity as Secretary of the Wisconsin Department of Corrections, *et al.*,<br><br>**Defendants.** | **Civil Action No. 17-CV-47** |

### REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**I.  INTRODUCTION**

Defendants' Brief in Opposition to Class Certification (dkt. 38) rebuts no part of Plaintiffs' showing under Rule 23(a) and (b)(2). Defendants concede that Plaintiffs represent a class of at least 165 individuals, far more than would be practicable to join as parties to this action. They do not dispute that Plaintiffs' complaint raises a constitutional challenge to systematic policies, patterns, and practices employed by Lincoln Hills School for Boys ("LHS") and Copper Lake School for Girls ("CLS"). They make no effort to rebut Plaintiffs' evidence that these policies, patterns, and practices are real—that LHS and CLS in fact make routine use of solitary confinement, mechanical restraints, chemical sprays, and strip searches. And they do not dispute that civil rights actions such as this one—where the sole relief Plaintiffs seek is

declaratory and injunctive relief benefiting the class as a whole—are the "paradigmatic" cases meant to be certified under Rule 23(b)(2). Defendants nominally challenge Plaintiffs on four issues relevant to certification—numerosity, commonality, typicality, and standing—but as explained below, each challenge is hollow. Plaintiffs thus respectfully ask the Court to grant their Motion for Class Certification and to certify a class of all prisoners who now are, or in the future will be, confined at LHS or CLS.

## II. ARGUMENT

Defendants do not dispute that Plaintiffs meet Rule 23(a)'s requirement of "adequate representation," that is, that Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). They challenge Plaintiffs on the following other provisions of Rule 23:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"];
>
> (2) there are questions of law or fact common to the class ["commonality"]; [and]
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"] . . . .
>
> (b) A class action may be maintained if Rule 23(a) is satisfied and if: . . .
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to
> the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23.

In deciding whether these provisions are satisfied, the Court may consider evidence and resolve factual questions "[i]f there are material factual disputes that bear on the requirements for class certification." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015); *see also id.* ("[F]or example, a judge might need to determine if a class really has 10,000 members as a plaintiff alleges or only 10, as alleged by defendants."). In the event of a material factual dispute, Plaintiffs would "bear[] the burden of demonstrating that certification is proper by a preponderance of the evidence." *Id.* at 373.

There are, however, no material factual disputes for the Court to resolve here. Plaintiffs accompanied their motion with evidence supporting the factual allegations material to certification. (*See* dkt. 4, Decl. of Laurence J. Dupuis & Exs. A-E; *see also* dkt. 3, Mem. Supp. Pls.' Mot. for Class Cert. at 6-7 and 10-12.) Defendants never challenge (and do not even discuss) this evidence in their brief. They also submitted no rebuttal evidence as part of their response. While there could prove to be factual disputes material *to the merits* of this action, Defendants have identified no factual disputes material *to class certification*. Thus, as set forth in more detail below, the law and the uncontested facts show that each of Rule 23's requirements has been met.

### A. Defendants Effectively Concede Plaintiffs' Showing of Numerosity.

Defendants concede the material points showing that Rule 23(a)(1) is satisfied. They agree that a class with as few as 40 members may be numerous enough. (*See* dkt. 38 at 5); *see also Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."). They also agree that Plaintiffs are

3

"representing a putative class of 165" individuals. (*See* dkt. 38 at 5.) Defendants do not truly even dispute that this class "is so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). Nowhere do they claim that it *would be practicable* to join each class member as a named party to this action. (*See* dkt. 38 at 5-6.)

Defendants appear to claim that Plaintiffs' class does not satisfy Rule 23(a)(1) because it includes future (and thus still-unknown) prisoners. (*See* dkt. 38 at 5.) This argument is untenable. Including future prisoners in the class—in addition to the 165 youth currently incarcerated by LHS and CLS—renders the class *more* numerous, the joinder of its members *less* practicable. Thus it enhances, rather than diminishes, Plaintiffs' showing under Rule 23(a)(1). *See Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) ("[T]he [numerosity] threshold may be relaxed when a party seeks only declaratory or injunctive relief, since the inclusion of future members increases the impracticability of joinder."); *see also Dunn v. Dunn*, 318 F.R.D. 652, 662 (M.D. Ala. 2016) ("[I]t is appropriate in prison-conditions litigation to consider future and as-yet-unidentifiable class members in determining whether joinder is impracticable"); *Hill v. Butterworth*, 170 F.R.D. 509, 514 (N.D. Fla. 1997) ("[T]he presence of an unknown number of future class members makes joinder of all interested individuals impracticable."); *Leist v. Shawano County*, 91 F.R.D. 64, 67 (E.D. Wis. 1981) ("[The members] are a constantly shifting class. This lack of ready identifiability supports, rather than detracts from, the impracticability of joinder of the members of the class.").

Nor does it matter that *future* class members cannot *presently* be counted with precision. Plaintiffs "are not required to specify the exact number of persons in the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Rather, "a class can be certified without

4

determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014); *see also Leist*, 91 F.R.D. 64, 67 ("There is no requirement that the size of the class be precisely calculated. Especially where the relief sought is declaratory and injunctive, even speculative and conclusory representations as to the size of the class have been held adequate to meet the numerosity requirement." (internal citation omitted)).

  **B.**  **Defendants Also Effectively Concede Plaintiffs' Showing of "Commonality"—and Err in Prematurely Seeking to Litigate the Merits of Plaintiffs' Claims.**

Defendants do not genuinely dispute that Plaintiffs' claims raise factual and legal questions common to all class members. Plaintiffs' opening brief cited recent cases holding that the Supreme Court's "analytical regime concerning 'commonality' does not serve as a barrier to the certification of class actions in cases involving prisoners' claims alleging a pattern and practice of conduct resulting in unconstitutional conditions of confinement." *Scott v. Clarke*, 61 F. Supp. 3d 569, 587 (W.D. Va. 2014) (collecting cases).[1] (*See* dkt. 3 at 8.) Defendants do not

---

[1] *See also Lippert v. Baldwin*, No. 10 C 4603, 2017 WL 1545672, at *4-5 (N.D. Ill. Apr. 28, 2017) (certifying a class of inmates, and noting that "'numerous courts have concluded that the commonality requirement can be satisfied by proof of the existence of systemic policies and practices that allegedly expose inmates to a substantial risk of harm.'" (quoting *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014))); *Doe v. Hommrich*, No. 3-16-0799, 2017 WL 1091864, at *1 (M.D. Tenn. Mar. 22, 2017) ("[T]he court . . . certified a class . . . consisting of 'all juveniles detained in the Rutherford County Juvenile Detention Facility who are or were placed in solitary confinement or isolation for punitive reasons . . . .'"); *V.W. by and through Williams v. Conway*, No. 9:16-CV-1150, 2017 WL 696808, at *1-2 (N.D.N.Y. Feb. 22, 2017) (granting class certification in an action challenging a county jail's "routine imposition of solitary confinement on juveniles"); *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153-54 (N.D. Cal. 2015) ("Post-*Wal-Mart*, courts continue to find the commonality requirement satisfied in cases challenging [systemic] correction facility conditions . . . ."); *Olson v. Brown*, 284 F.R.D. 398, 410 (N.D. Ind. 2012) (Unlike the situation in *Wal-Mart*, where the plaintiffs could not demonstrate that the entire
5

dispute that these cases state the law correctly. They do not mention the cases at all in their brief. They further do not dispute that Plaintiffs' complaint alleges the existence of systematic policies, patterns, and practices and challenges them as violations of the Fourteenth, Eighth, and Fourth Amendments. Nor could they possibly dispute that this is what this case is about. (*See, e.g.*, dkt. 13, Am. Compl. ¶¶ 1, 30, 47, 52, 89-91, 103, 139, 214, 222, 228, 234, 240, 246, 253, 260, 267, 274, 281, 287.)

Defendants, for that matter, seem not even to dispute that the systematic policies, patterns, and practices alleged by Plaintiffs do in fact exist. Plaintiffs supported their certification motion with evidence that LHS and CLS have 15-20% of their juvenile inmates in solitary confinement on any given day; that they place these youth in solitary confinement for up to months at time, for a variety of disciplinary infractions; that they follow an explicit policy permitting mechanical restraints to be used any time a youth in solitary confinement is allowed outside of his or her cell; and that they also follow an explicit policy permitting the use of chemical spray when there is no immediate danger to the safety of youth or staff, such as to "enforce a DOC rule, a posted policy or procedure or an order of staff member." (*See* dkt. 3 at 10-11; dkt. 4, ¶ 2, 5-12, 14-7 & Exs. A, C, D, and E.)[2]

---

company operated under a general policy of discrimination, or a specific practice that tied all of their claims together, in this case, Mr. Olson has shown that the [Tippecanoe County Jail's] specific practices relative to the handling (or non-handling) of grievances, opening of legal mail, and restricting access to the law library, have caused the inmates to suffer the same potential injury, which ties all of their jail standards claims together."); *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 622 (W.D. Wis. 2003) (certifying a class "with respect to . . . claims that . . . St. Croix County [and two County officials] had an unconstitutional policy or custom of strip searching all arrestees that were booked in the jail").
[2] Plaintiffs' initial motion for class certification did not provide evidence of Defendants' policies and practices with regard to strip searches with their initial motion for class certification, because the original complaint did not seek relief from such policies and practices. Plaintiffs' amended complaint, however, alleges the existence of such policies and practices (dkt. 13), and Defendants' opposition to class

6

Defendants dispute none of this: They never discuss Plaintiffs' evidence in their response, and have filed no evidence to rebut it. Satisfying Rule 23(a) does not require Plaintiffs to *prove* the existence of the systematic policies, patterns, and practices they allege, since the question *whether* those polices, patterns, and practices exist itself is a factual question common to all class members. *See Bell*, 800 F.3d at 375-76 ("[T]he question 'Did PNC have an unofficial policy or practice that required employees class-wide to work off-the-clock overtime hours?' is indeed a common one that is capable of class-wide resolution."). But in any event, Defendants do not, in their certification response, actually contest that the facts are as Plaintiffs claim them to be.

Defendants' sole argument on "commonality" appears to be that the Constitution permits the policies, patterns, and practices that Plaintiffs challenge.[3] Working from that premise, they contend that Plaintiffs must bring claims different from those they have actually pled—claims that depend on the details of each specific instance where LHS and CLS place the children in their care in solitary confinement for weeks or months at a time, shackle them to tables or desks

---

certification does not dispute the factual allegations in the amended complaint regarding strip search policy and practice. Moreover, documents Defendants recently provided in discovery confirm the existence of a policy that requires strip searches in numerous situations, including upon entry to the facility (regardless of whether the child was transferred from another secure facility), after every non-professional visit, and any time a child is taken to the solitary confinement unit, whether or not there is any suspicion the child possesses contraband. (Second Dupuis Decl. Ex. A (LHS/CLS Policy 6.12).) Defendants also produced strip search logs that appear to show, on preliminary review, that they conducted approximately 2,030 strip searches in 12 months, but found "contraband" in only 32 of those searches—a hit rate of 1.7%—and that the contraband consisted primarily of innocuous items, such as pencils, photos and candy. (Second Dupuis Decl. ¶¶ 7-9 & Ex. B (Strip Search Logs).)

[3] *See, e.g.*, dkt. 38 at 11 ("Plaintiffs have not provided legal authority holding that a juvenile's Eighth and Fourteenth Amendment rights are violated, per se, when restrictive housing, mechanical restraints, or incapacitating spray are used for any purpose other than to prevent imminent and serious physical harm to persons."); *id*. at 14 ("Plaintiffs have not shown that any policies or customs at LHS and CLS are unconstitutional . . . .").

during the limited time out of their cells, spray them with painful chemicals, or subject them to unreasonable strip searches. (*See* dkt. 38 at 11-14.) For example, Defendants assert that the "right to minimum acceptable standards of care and treatment for juveniles and the right to individualized care and treatment" articulated in *Nelson v. Heyne* necessitates an individualized inquiry into each juvenile's needs before liability can be determined. (Dkt. 38 at 12.) But *Nelson* itself was a class action challenging the *systematic* use of corporal punishment and tranquilizing drugs and the *systematic* denial of individualized behavioral classifications. 491 F.2d 352, 353 (7th Cir. 1974) (describing case as "this class civil rights action"); *id.* at 360 (finding that without "a *program* of individual treatment" (emphasis added) plaintiffs' interests in rehabilitation will be "defeated"). As Plaintiffs here allege, and as *Nelson* illustrates, prison officials who employ systematic policies and practices that fail to satisfy "minimum acceptable standards" and deny access to "individualize care and treatment" across the board, are depriving all youth in their custody of these rights. *Id.*

Similarly, Defendants assert that Plaintiffs' excessive force claims require individualized determinations of a guard's state of mind. (Dkt. 38 at 14.) However, Plaintiffs do not claim that any *individual* application of force violates his or her Eighth or Fourteenth Amendment rights, but rather that the Defendants' policies and practices that permit the unnecessary use of pepper spray and physical restraints *systematically* deprive Plaintiffs of their right to be free from excessive force and reflect Defendants' *systematic* deliberate indifference to the harm such practices cause. Such systematic claims are amenable to classwide resolution, as numerous cases reflect. *See, e.g., Dockery v. Fischer*, -- F.Supp.3d --, 2015 WL 5737608, *16 (S.D. Miss. 2015) (finding commonality where evidence substantiated "claim that deficiencies in the security and

8

policy practices at EMCF subject members of the EMCF Class to an unreasonable risk of serious harm . . . from prison staff who routinely use excessive force"); *Ingles v. City of New York*, No. 01 Civ. 8279, 2003 WL 402565, *1 (S.D.N.Y. 2003) (certifying class alleging prison employees "engaged in a pattern and practice of excessive force" and "training procedures establish a system-wide policy of excessive force").

To be clear, Defendants are wrong not only in their characterization of the common questions presented, but also about the legality of their practices. Plaintiffs recently addressed the merits of their claims in their Brief in Support of Motion for Preliminary Injunction. (*See* dkt. 17.) In sum, this Court would hardly be alone in concluding that practices such as Defendants' violate juveniles' rights under the Eighth and Fourteenth Amendments. *See V.W. by and through Williams v. Conway*, No. 9:16-CV-1150, 2017 WL 696808, at *17-22 (N.D.N.Y. Feb. 22, 2017) (granting a preliminary injunction and concluding that the plaintiffs are substantially likely to succeed on a claim that the "defendants' routine use of solitary confinement on juveniles violates the Eighth and Fourteenth Amendments"); *Doe v. Hommrich*, No. 3-16-0799, 2017 WL 1091864, at *2 (M.D. Tenn. Mar. 22, 2017) (granting a preliminary injunction and concluding that the plaintiffs are substantially likely to succeed on a claim that "that juveniles being detained in solitary confinement or isolation for punitive or disciplinary purposes constitutes . . . inhumane treatment" in violation of Eighth and Fourteenth Amendments); *id.* ("[S]olitary confinement of juveniles in government custody for punitive or disciplinary reasons, especially

9

for extended periods of time and especially for youth who may suffer from mental illness, violates the Eighth Amendment's prohibition against the inhuman treatment of detainees.").[4]

Yet the more immediate problem with Defendants' argument is that they ask the Court to decide the merits of Plaintiffs' claims prematurely. In the context of this motion for certification, Plaintiffs must only "prove compliance with Rule 23, and need not prove the merits of the underlying common question." *Bell*, 800 F.3d at 376; *see also id.* ("A proposed class of plaintiffs must prove the *existence* of a common question . . . but it need not prove that the answer to that question will be resolved in its favor." (emphasis added)). Plaintiffs have shown that their constitutional challenge to LHS and CLS's systematic policies, patterns, and practices raises questions common to all class members. Defendants are wrong to suggest that more is required.

Defendants also are mistaken in relying upon *Phillips v. Cook County*, 828 F.3d 541 (7th Cir. 2016). The plaintiff detainees in that case brought claims "best characterized as claims of isolated instances of indifference to a particular inmate's medical needs." *Phillips*, 828 F.3d at 554 (internal quotation marks omitted)). Their class was decertified on that ground. Still, the

---

[4] *See also Hope v. Pelzer*, 536 U.S. 730, 747 (2002) (accepting Court of Appeals precedent that "cuffing an [adult] inmate to a hitching post for a period of time extending past that required to address an immediate danger or threat is a violation of the Eighth Amendment"); *Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010) (collecting appellate decisions concluding "that where chemical agents are used unnecessarily [on adult inmates], without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement"); *Nelson*, 491 F.2d at 358 (holding that incarcerated juveniles have an affirmative "right to rehabilitative treatment" under the Fourteenth Amendment); *id.* at 360 ("When a state assumes the place of a juvenile's parents, it assumes as well the parental duties, and its treatment of its juveniles should, so far as can be reasonably required, be what proper parental care would provide."); *V.W. by and through Williams v. Conway*, 2017 WL 696808, at *19 ("[T]here is a broad consensus among the scientific and professional community that juveniles are psychologically more vulnerable than adults. And the Supreme Court has continued to stress that these fundamental differences are consequential in the Eighth Amendment context." (internal citations omitted)).

10

*Phillips* court confirmed that the plaintiffs *could have* met Rule 23's "commonality" requirement with "classwide evidence that a prison [was] engaging in a policy or practice which rises to the level of a systemic indifference." *Id.* at 557. Thus, in a recent case, the Northern District of Illinois correctly distinguished *Phillips* when certifying a class of inmates who—despite being spread across twenty-five different facilities—had provided evidence of systematic policies and practices that exposed them all to substantial risk of harm. *Lippert v. Baldwin*, No. 10 C 4603, 2017 WL 1545672, at *5 (N.D. Ill. Apr. 28, 2017). *Phillips* is similarly distinguishable here, where Plaintiffs challenge the policies, patterns, and practices employed at a single juvenile facility, and have submitted unrebutted evidence that these policies, patterns, and practices are real.

### C. Defendants' Arguments on "Typicality" Fail for the Same Reasons as Their Arguments on "Commonality."

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Not surprisingly, then, Defendants' arguments on "typicality" fail on the same grounds as those about "commonality." In addressing "typicality," Defendants again assume that LHS and CLS's policies, patterns, and practices are constitutional, and thus that Plaintiffs can bring only claims requiring "careful considerations of specific circumstances surrounding each alleged constitutional deprivation." (Dkt. 38 at 16.) This argument lacks merit for the same reasons already given above.

### D. Defendants' Raise No Material Dispute About Standing and Thus Fail to Rebut Plaintiffs' Showing Under Rule 23(b)(2).

Defendants do not dispute that civil rights actions such as this one "are the paradigmatic 23(b)(2) class suits." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979) (affirming

11

certification of a class of jail inmates), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915 (1979).[5] Plaintiffs cited and relied upon the *Marcera*, *Coley*, and *Unknown Parties* cases (among others) in their opening brief. (*See* dkt. 3 at 14-15.) Defendants do not address these cases at all in response. (*See* dkt. 38 at 16-18.)

Defendants raise the question of standing, but misstate the law by claiming that Plaintiffs would lack standing if the relief they seek "might not have any effect on one or more" of them. (Dkt. 38 at 17.) In making that claim, Defendants misstate the law in two respects.

First, it suffices if a named plaintiff is "a member of the class which he or she seeks to represent *at the time the class action is certified*." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (emphasis added). Plaintiffs needn't show that any of them will be class members *when this action is finally resolved*. *See id.* at 402 (explaining that after a class is certified, an Article III controversy "may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot"); *Matz v. Household Intern. Tax Reduction Inv. Plan*, 774 F.3d 1141, 1145 (7th Cir. 2014) ("Ordinarily when a class representative is dismissed on grounds applicable to him but not to all other members of the class, the suit is not dismissed but rather another member of the class is substituted as class representative.").

---

[5] *See also Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) ("[T]he relief sought on behalf of the class includes a declaration that certain present commitment procedures and conditions of confinement are unconstitutional. Therefore, a class action may be maintained under Fed. R. Civ. P. 23(b)(2), which is an especially appropriate vehicle for civil rights actions seeking such declaratory relief for prison and hospital reform." (internal quotation marks omitted)); *Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 643 (D. Ariz. 2016) ("Plaintiffs' claims for injunctive relief stemming from allegedly unconstitutional conditions of confinement are the quintessential type of claims that Rule 23(b)(2) was meant to address.").

Second, Defendants could not defeat certification with a mere showing that *one* named Plaintiff lacks standing. They instead would need to show that *none* of the named Plaintiffs has standing to represent the class. *See Neale v. Volvo Cars of N.A., LLC*, 794 F.3d 353, 364 (3d Cir. 2015) ("[A] class action is permissible so long as at least one named plaintiff has standing."); William B. Rubenstein, *Newberg on Class Actions* § 2.8 (5th ed.) ("A class action can be maintained by one class representative with proper standing. When a class action has multiple class representatives, a finding that some (but not all) representatives lack standing therefore does not require dismissal." (internal footnote omitted)).

Standing is not a real issue here, because seven different Plaintiffs clearly have the requisite standing. Eight of the Plaintiffs were confined at LHS or CLS when they filed or joined this suit. (*See* dkt. 1, Compl. ¶¶ 4-6 (J.J., K.D., and C.M); dkt. 13, Am. Compl. ¶¶ 9-13 (M.S., A.V., M.R., S.K., and A.P.).) Seven of those eight remain confined there today, and have provided declarations to evidence their confinement. (*See* 2d. Decl. of J.J. dated May 15, 2017; dkt. 23, Decl. of C.M.; dkt. 25, Decl. of M.S.; dkt. 26, Decl. of A.V.; dkt. 27, Decl. of M.R.; dkt. 28, Decl. of S.K.; dkt. 29, Decl. of A.P.) The standing of these seven Plaintiffs is indisputable. Defendants do not even try to dispute it (*see* dkt. 38 at 16-18), though they of course know who is and is not incarcerated in their facilities.

Although the other two Plaintiffs' standing is immaterial for purposes of certification, they have standing as well. K.D. was confined at CLS when she filed suit (dkt. 1, ¶ 5), has since been released, but remains under supervision and could be sent back to CLS for violating the terms of supervision. (Dkt. 1, ¶ 5; dkt. 22, Decl. of K.D.; dkt. 13, ¶ 133.) R.N. was transferred from LHS to the Mendota Juvenile Treatment Center shortly before he filed suit, but similarly

13

could be returned to LHS, where he spent the majority of 2016 in solitary confinement. (Dkt. 1, ¶¶ 7, 124, and 129-131; dkt. 24, Decl. of R.N.) The real risk that K.D. and R.N. face of being returned to LHS and CLS is underscored by the experience of J.J., who was released from LHS after filing this suit, but now is confined there again and already has been further subjected to solitary confinement and mechanical restraints. (*See* 2d Decl. of J.J. dated May 15, 2017.) So, while certification is proper whether or not K.D. or R.N. have standing, both in any event have standing under the "capable of repetition, yet evading review" exception to the mootness doctrine. *See Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975) ("[T]he record does not indicate whether any of [the named plaintiffs] were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under *Sosna*. But this case is a suitable exception to that requirement. . . . It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.").[6]

*Kartman v. State Farm Mutual* does not aid Defendants. It was an insurance case that involved claims for breach of contract and bad-faith failure to pay benefits. *See Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 885-86 (7th Cir. 2011). The *Kartman* plaintiffs nominally sought an injunction—but one that would have served no purpose except to lay the ground for "subsequent individual determinations of liability and damages." *Id.* at 886; *see also*

---

[6] *See also Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978) (affirming the district court's decision to certify a class of juveniles involved in the juvenile court system, even though the named plaintiff's claims were moot at the time of the certification decision); *Olson v. Brown*, 594 F.3d 577, 579 (7th Cir. 2010) (applying the "capable of repetition, yet evading review" exception to a class action suit challenging jail conditions).

*id.* ("[T]he plaintiffs' claim for injunctive relief suffers from some serious conceptual confusion. This is a suit for breach of contract and bad-faith denial of insurance benefits, the remedy for which is damages. . . . [Injunctive] relief is not appropriate for several reasons, not least of which is that the normal remedy for wrongful denial of insurance benefits is damages, not equitable relief."). The *Kartman* plaintiffs lost because their case was "simply an action for damages—not the dual remedies of an injunction plus damages—and if suitable for class adjudication at all, [could have been] certified only under Rule 23(b)(3)." *Id.* at 889. *Kartman* thus has no application here. Plaintiffs appropriately seek injunctive relief, and in fact seek no damages at all.

## III. CONCLUSION

Plaintiffs seek rulings that LHS and CLS are violating the constitutional rights of named Plaintiffs and all other youth similarly situated by subjecting all of them to the same systematic policies, patterns, and practices of using solitary confinement, mechanical restraints, chemical sprays, and strip searches. Plaintiffs seek these rulings on behalf of themselves and a class of at least 165 currently incarcerated youth and innumerable future members. They should be allowed to represent that class here. Thus, Plaintiffs respectfully ask this Court to certify a class consisting of all prisoners who now are, or in the future will be, confined at Lincoln Hills School for Boys or Copper Lake School for Girls.

Dated this 19th day of May, 2017.

ACLU OF WISCONSIN FOUNDATION
Laurence J. Dupuis (SBN 2029261)
Karyn L. Rotker (SBN 1007719)

R. Timothy Muth (SBN 1010710)
207 E. Buffalo Street, Suite 325
Milwaukee, WI 53202
Telephone: (414) 272–4032
Facsimile: (414) 272–0182
ldupuis@aclu–wi.org
krotker@aclu–wi.org
tmuth@aclu–wi.org

JUVENILE LAW CENTER
Jessica Feierman
Karen Lindell
Marsha Levick
The Philadelphia Building
1315 Walnut Street, 4th Floor
Philadelphia, PA 19107
Telephone: (215) 625–0551
jfeierman@jlc.org
klindell@jlc.org
mlevick@jlc.org

QUARLES & BRADY LLP
Matthew J. Splitek (SBN 1045592)
Rachel A. Graham (SBN 1069214)
33 East Main Street, Suite 900
Madison, WI 53703
Telephone: (608) 251–5000
matthew.splitek@quarles.com
Rachel.graham@quarles.com

   s/ Zachary T Eastburn
Emily L. Stedman (SBN 1095313)
Zachary T Eastburn (SBN 1094676)
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Telephone: (414) 277–5000
emily.stedman@quarles.com
zachary.eastburn@quarles.com

*Attorneys for Plaintiffs*