IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

J.J., *by and through his next friend Sakeena Jackson*; K.D., *by and through her next friends John Levy and Meranda Davis*; C.M., *by and through his next friend Toinette Ducksworth*; R.N., *by and through his next friend Gloria Norwood*; M.S., *by and through his next friend Jolene Waupekanay*; A.V., *by and through his next friend Veronica Rocha-Montejano*; M.R., *by and through his next friend Autumn Rodgers*; S.K., *by and through her next friend Thomas Korn*; and A.P., *by and through her next friend Louise Plaskey*,

    Plaintiffs,

v.

JON E. LITSCHER, JOHN D. PAQUIN, WENDY A. PETERSON, and BRIAN GUSTKE,

    Defendants.

PRELIMINARY INJUNCTION

17-cv-47-jdp

---

Pursuant to Fed. R. Civ. P. 65(a), and for the reasons set forth in the court's June 23, 2017 oral ruling and order, Dkt. 65:

1. The prospective relief granted by this preliminary injunction is narrowly drawn and extends no further than necessary to correct the harm to plaintiffs warranting preliminary relief.

2. The prospective relief granted by this preliminary injunction is the least intrusive means of correcting the ongoing harm to plaintiffs.

3. The court makes these findings having given substantial weight to and consideration of any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

4. The prospective relief granted by this preliminary injunction complies with the requirements of 18 U.S.C. § 3626(a)(2).

IT IS ORDERED that:

Defendants Jon E. Litscher, John D. Paquin, Wendy A. Peterson, and Brian Gustke, in their official capacities, and their officers, agents, servants, employees, and attorneys, and all those acting in concert with them, are preliminarily enjoined as follows, pending a final judgment in this matter:

**A. Disciplinary and punitive restrictive housing**

Defendants are enjoined from using disciplinary or punitive restrictive housing or any other form of disciplinary or punitive solitary confinement in any manner inconsistent with the following:

1. Defendants shall not place youth in the restrictive housing units at Lincoln Hills School and Copper Lake School (LHS/CLS) for disciplinary or punitive purposes for minor infractions and non-violent offenses. A violent offense is an action causing or attempting to cause physical harm to another person. This provision shall go into effect as of August 14, 2017.

2. Defendants may place youth with mental health diagnoses (a mental health code designation of MH-1, MH-2a, MH-2b, or ID) in restrictive housing, but such placements will be reviewed by a PSU staff member to determine whether that placement is a contra indication to the youth's mental health or if other options will adequately protect the youth or staff. If such a youth remains in pre-hearing security after the initial review process (described in I.3. below), and if he or she has a designated mental health code, a review as noted in this section will occur immediately by a PSU staff member. This review will be conducted in person

unless, due to staffing limitations, no PSU staff is personally available, in which case it may occur by phone or video conferencing.

3. Effective July 21, 2017, defendants shall not confine youth in pre-hearing security (PHS) unless the youth presents an immediate and substantial risk of great bodily harm to self or others. Should defendants determine that such risk exists and that such placement is necessary, defendants shall, within four hours of such placement, conduct an initial review of each youth brought to RHU for PHS to determine whether such placement is necessary and whether release of the youth back to general population will jeopardize the safety of the youth, staff, or facility. If the decision is made to retain the youth in RHU, a second review will occur within four hours of the initial review, and release/retention will be judged by the actions and behavior of the youth since the initial review. A determination that a youth should continue in PHS for more than four hours must be approved by the superintendent or designee.

4. Effective July 21, 2017, defendants shall limit the maximum length of a disposition that includes any placement in RHU for punitive purposes to seven days.

5. Defendants shall immediately begin and, no later than July 21, 2017, shall complete a review of the placements of all youth currently held in RHU. Any youth held in such housing for reasons that violate the terms of this injunction shall be released as soon as practicable and without delay. The placements of the named plaintiffs currently held in RHU shall be the first to be reviewed.

6. All uses of disciplinary RHU, both pre-hearing and post-hearing, shall be justified in writing and authorized by a shift supervisor, with notice to the superintendent or designee. Written notification of a youth's placement in RHU shall be promptly provided to the youth and shall include a description of reasons for confinement and the less restrictive disciplinary measures attempted.

7. Regardless of the length of any sentence involving placement in restrictive housing for punitive purposes, there shall be a daily review of youth in RHU to determine whether that youth can be released early for positive behavior. Criteria for early release will be explained to each youth.

8. Within three months, defendants will provide to the court and counsel for the plaintiffs their Facility Improvement Plan targeting reductions in the use of restrictive housing established under the Council of Juvenile Correctional Administrators' Performance-Based Standards.

**B. Conditions of restrictive housing**

Defendants are ordered to ensure that the conditions of restrictive housing or any other form of solitary confinement meet the following minimum standards:

1. Any youth placed in restrictive housing for whom there is not already a mental health evaluation on file must have such an evaluation as soon as possible, and in any event no later than 24 hours after being placed in RHU. If a youth is identified with a mental health need (a mental health code designation of MH-1, MH-2a, MH-2b, or ID), placements in RHU will be reviewed by a PSU staff member to determine whether that placement is a contra indication to the best

4

interests of the youth's mental health or if other options will adequately protect the youth or staff.

2. Any youth placed in RHU for any period in excess of 24 hours shall receive daily contact with a mental health provider. This contact shall be face-to-face unless, due to staffing limitations, no PSU staff is personally available, in which case it may occur by phone or video conferencing. This provision shall go into effect on August 31, 2017, for business days and on September 30, 2017, for holidays and weekends.

3. No later than July 21, 2017, defendants shall modify property policies to allow youth in RHU to have property items similar to or the same as those items allowed in general population. Specific items of property may be restricted as needed for safety of the youth and staff on a case-by-case basis. These restrictions will be temporary in nature until these items can be safely returned to the youth. A Supervising Youth Counselor or Unit Supervisor shall review any property restrictions on a daily basis and document the review.

4. Youth in restrictive housing shall receive:
    a. All regularly scheduled social worker visits, mental health services, and other health services, and any additional mental health services contemplated by this order. This provision shall go into effect no later than July 21, 2017.
    b. Any rehabilitative programming (e.g., Aggression Replacement Training, Juvenile Cognitive Intervention Program, etc.) that was scheduled or in

process before placement in RHU. This provision shall go into effect no later than September 30, 2017.

c. Educational services. To the extent practicable, youth in restrictive housing shall receive educational services with the general population. If attending educational services with the general population proves unworkable due to an immediate and substantial threat of physical harm or an unreasonable risk of significant disruption to classroom instruction, youth in restrictive housing shall receive alternative educational services on days that the general population receives such services. Defendants shall ensure special education services for eligible youth. This provision shall go into effect no later than September 30, 2017.

d. Additional "out time" for gross motor exercise and social interaction. No later than July 21, 2017, defendants shall permit youth to talk to peers during such "out time" unless such conversations pose an immediate and substantial threat of physical harm to another person. Sensory stimulation shall also be available during out time, unless such activities cause immediate and substantial disruption or risk of physical harm. This provision will go into effect no later than August 14, 2017.

e. Meals out of the cell, absent an immediate and substantial threat of physical harm to another person from the youth eating that meal out of the cell. This provision shall go into effect no later than August 14, 2017.

f. Minimum "out time" each day and each week. Absent an immediate and substantial threat of physical harm to another person or a direct refusal to

come out of his or her room, youth shall receive a minimum of 15 hours per week for activities identified in paragraphs a through c and 15 hours per week for activities identified in paragraphs d and e, for a minimum of 30 hours of out time total per week; however, youth shall always receive a minimum of two hours of out time per day, absent an immediate and substantial threat of physical harm to another person or a direct refusal to come out of his or her room.

5. Effective July 21, 2017, youth shall not be placed on control status absent an immediate and substantial risk of serious physical harm to self or others.

6. Staff shall visually verify and document the safety and welfare of each youth held in RHU during the time such youth is in the cell at frequent and random intervals, and no fewer than two times per hour during daytime hours and four times per hour during evening hours.

7. Defendants shall notify all youth of all the above rights and of procedures for filing grievances and appeals at the time of each placement in RHU.

**C. Chemical agents**

Defendants are enjoined from using chemical agents in any manner that is inconsistent with the following:

1. Effective no later than July 21, 2017, defendants shall use chemical agents, including but not limited to OC or pepper spray, only when a youth is engaging in physical harm to others or to prevent the youth from causing bodily harm to another. Medical and mental health staff should be consulted as soon as practicable after the use of OC spray.

7

2. Contra indications to chemical agents shall be maintained by the Health Service Unit (HSU) to comply with the Health Insurance Portability and Accountability Act. Staff must check with HSU prior to any planned use of chemical agents to determine whether any contra indications exist.

3. Defendants shall immediately begin a systematic review all instances of OC use in the first six months of 2017 to identify patterns and trends. The review will include, at a minimum, whether the use was planned or reactive, the location, the date/day/time, and other actions by the involved youth (e.g., fighting other youth, physically resisting staff, covering up windows or cameras). Defendants will also review the number of youth who were exposed versus the number of instances to identify ways to reduce and eliminate use of chemical agents, determine any training needs, and identify any alternatives that could be used on a facility-wide or individual basis. This review shall be completed and its results reported to counsel and the court no later than August 31, 2017.

4. Based on the review in the preceding paragraph, by October 31, 2017, defendants shall prepare and provide to counsel and the court a plan to further reduce or eliminate any remaining use of chemical agents.

**D. Mechanical restraints**

Defendants are ordered to ensure that the use of mechanical restraints for any purpose (other than documented mental health purposes as part of a plan to ensure the safety of the youth) meets the following minimum standards:

1. Defendants may restrain youth during vehicular transportation on or off site.

2. Under all other circumstances, there is a presumption that youth, including youth in restrictive housing, shall not be mechanically restrained. Defendants may restrain a youth only after an individualized determination that the youth poses an immediate and substantial risk of physical harm to themselves or others. This provision shall go into effect no later than July 21, 2017.

3. Defendants shall not use mechanical restraints unless there is authorization as follows: a Youth Counselor, Youth Counselor Advanced, or supervisor in a living unit may approve the use of mechanical restraints for up to 45 minutes. Any use of restraints in excess of 45 minutes must be approved by the superintendent or security director or their designee. Any use of restraints in excess of 90 minutes must be authorized by the division administrator of juvenile corrections or designee. All approvals must be in writing and articulate the specific facts and circumstances justifying continued restraints. This provision shall go into effect no later than July 21, 2017.

4. Defendants shall use only the minimum level of restraints necessary to eliminate an immediate and substantial risk of physical harm to self or others. Restraints shall not include leg or ankle restraints unless the youth is presenting an active risk of physical harm to self or others arising from free movement of the legs. Youth shall not be tethered to fixed objects. This provision shall go into effect no later than July 21, 2017.

5. Defendants shall remove restraints promptly after the youth is in a safe place or no longer poses an immediate and substantial threat of physical harm to self or others.

Entered July 10, 2017.

                                BY THE COURT:

                                /s/
                                _____
                                JAMES D. PETERSON
                                District Judge