**U. S. Court Ordered Legal Notice to**
**All Youth Held at Lincoln Hills and Copper Lake**
**and their Parents or Guardians**

## Notice of proposed settlement of lawsuit about security practices at Lincoln Hills School for Boys and Copper Lake School for Girls

The Wisconsin Department of Corrections (DOC) has agreed to settle a class action lawsuit about security practices at the juvenile correctional facilities at Lincoln Hills School for Boys and Copper Lake School for Girls (LHS/CLS) located in Irma, Wisconsin. Several youth filed the lawsuit in January 2017.  The youth said that practices involving solitary confinement, pepper spray, mechanical restraints (including "the belt"), and strip searches violated their due process rights under the 14th Amendment and the 8th Amendment to the U.S. Constitution's ban on cruel and unusual punishment.

This notice describes (1) the lawsuit, (2) the proposed terms of Settlement, and (3) your legal rights. It tells you how to object if you disagree with the Settlement.

## 1.      What is the lawsuit about?

**The lawsuit is a class action which asks the federal court to rule that the use of solitary confinement, pepper spray, mechanical restraints and strip searches violates rights under the U.S. Constitution, and to order that those practices stop.** The lawsuit does not involve money damages, so whether this case settles or goes to trial, no youth will obtain money from DOC. Nothing in the Proposed Settlement prevents you from filing a separate lawsuit for money against DOC.

These officials in the Department of Corrections are involved in the suit: Jon E. Litscher, Secretary of DOC; John D. Paquin, Administrator of the Division of Juvenile Corrections of the DOC; the Superintendent of LHS/CLS and the Security Director of LHS/CLS. During the whole case, the DOC has denied that its actions violate the Constitution.

**The class**. U. S. District Court Judge James Peterson approved the case as a class action. The class is all youth at LHS/CLS, now or in the future. If the Court approves this Settlement, this Settlement will affect your rights.

**Court rulings.**  On June 23, 2017, Judge Peterson ruled on the Plaintiffs' Motion for a Preliminary Injunction, which was asking the Court to immediately stop or limit practices like solitary confinement and the use of pepper spray.   Judge Peterson ruled that there was more than a reasonable likelihood that the Plaintiffs would win on their constitutional claims.   The Court ordered a "preliminary injunction" – an order that went into effect while the case was still going on - to limit the use of solitary confinement, pepper spray

and mechanical restraints and which required greater "out time" and services when youth are in confinement.

If the suit is not settled, trial is currently scheduled to begin in November 2018.

## 2. Why are the Plaintiffs settling without a trial?

The Plaintiffs and the DOC agreed to reach settlement through negotiations on revised practices concerning room confinement, pepper spray, mechanical restraints and strip searches.  The Plaintiffs decided that an agreement (1) would provide for improvements to the security practices at LHS/CLS equal to or better than they could obtain at trial; and (2) those improvements would happen much faster than waiting for a court order after trial and possible appeals. That legal process could take 18 months or longer.

## 3. What are the major parts of the settlement?

The youth and the DOC have proposed an Agreement that will, if approved by the Court, settle this case. A summary of the Settlement follows:

A.    Restriction on Room Confinement

The settlement calls for completely stopping the use of room confinement to punish youth within 10 months.  Room confinement is defined as confining a youth alone in room or cell outside of normal sleeping hours. Youth and staff often call room confinement "security" or being put in "the hole." Once the Court approves the settlement, the longest youth can be in punitive room confinement will be 7 days. That will go down to at most 3 days, seven months after the Court approves the settlement. LHS/CLS will completely stop using "room confinement" as punishment 10 months after the Court approves the settlement.

The settlement limits the use of "administrative room confinement," (also known as "ad seg"), to situations when a youth poses a serious risk of imminent physical harm to others. Starting six months after the Court approves the settlement, LHS/CLS will not hold any youth in administrative confinement for more than 4 hours, with the possibility of two 4 hour extensions (so a total of at most 12 hours), not including night time hours when youth are normally sleeping.

The settlement also says that youth in room confinement must get at least 3 hours a day and 30 hours a week of "out time."   Youth will get educational, rehabilitational, psychological and related services similar to the services

youth get in general population.    Youth will also get out time for exercise, social interaction and  meals.

B.    Pepper (OC) Spray

The use of OC Spray and other chemical agents is prohibited twelve months after approval of the Settlement.

C.    Mechanical Restraints

Restraints (including handcuffs, the "belt" and other restraints) can only be used by specifically trained staff, and only if those staff decide that restraints are the "least restrictive means" to deal with an imminent (immediate) threat that a youth will physically harm himself or herself, or others. Staff must immediately remove restraints when the youth regains control and when the threat of harm or the safety concern lessens or ends.  LHS/CLS cannot use any mechanical restraint besides handcuffs unless they are needed to prevent a youth from hurting himself or herself, to prevent an immediate substantial threat of physical harm to others, or in some situations during transportation.

Mechanical restraints can never be used for punishment or discipline. Youth also can never be restrained to a fixed object, such as a bed, wall, desk, or table (except if PSU specifically orders it for the safety of the youth).

Any use of mechanical restraints, except during transportation or for mental health purposes, must be authorized by a Youth Counselor, Youth Counselor Advanced, or supervisor in a living unit.  No youth shall be left alone in restraints.  Any use of mechanical restraints in excess of 45 minutes must be approved by the superintendent, security director, or someone they pick, and reviewed every 45 minutes.

D.    Strip searches

The agreement limits the situations when LHS/CLS can strip search youth. Staff may not strip search any youth unless there is probable cause to believe that the individual youth possesses drugs or weapons that could not be discovered through less intrusive means. Before conducing a strip search, staff must try using less intrusive searches, like using a metal detector, pat down, or allowing the youth to change into a tank top or other clothing.

If a strip search is conducted, staff must ensure that no other people can see the search, including by video or other recording device. A youth can never be strip searched where another youth could see it.  Strip searches may only be conducted by individuals of the same gender identity as the youth being searched, unless the search is conducted by a medical professional. Strip

searches must be conducted by staff trained in trauma-informed practices. If a youth with a known or suspected mental health diagnosis or history of sexual abuse objects to a strip search, staff must consult with mental health practitioners before conducting a strip search.

E.    Changes to Administrative Code

To protect youth after LHS/CLS is shut down, the DOC will make efforts to amend the Administrative Code to include these same limits on security practices to govern new facilities which will be built in Wisconsin.

**4.    Who will decide if DOC is complying with the Settlement?**

Teresa Abreu will be the "Compliance Monitor," the person who will decide if DOC is following what the settlement requires. She will visit LHS/CLS regularly to see if the Staff are following the requirements of the settlement, and she also can meet with any youth or staff member. All talks with the Monitor will be confidential, and the privacy of all youth will be protected.

The "Compliance Monitor" will write a report about whether and how DOC is following the settlement agreement after each visit to LHS/CLS. She will say whether DOC is not following the agreement, is partially following the agreement, or is fully following the agreement.

The Monitor will give a draft report to the lawyers for the youth and to DOC. Each side may make suggestions for changes. The Monitor's final reports will be filed with the Court. Youth may read the reports in the school library and in the common areas of each housing unit.   Parents or guardians of the Youth may request the reports from the lawyers for the youth.

**5.    How is the Agreement enforced?**

If the Monitor finds that the DOC is not complying with the Agreement, or if the youth and their lawyers decide that the DOC is not following the agreement, the lawyers for the youth will notify the DOC and try to resolve the problems.   If those discussions are unsuccessful in resolving the problem, the lawyers for the youth may ask the Judge to order DOC to follow with the Settlement Agreement, or to hold DOC in contempt of court, or both.  If the DOC is doing something that threatens immediate, irreparable harm to any youth, the lawyers for the youth may ask the Court to order certain actions immediately.

**6.    When does the Agreement end?**

The Agreement will be in effect for at least 3 years, unless before then DOC has closed LHS/CLS and amended the Administrative Code to provide substantially the same protections as this Agreement. The monitor must also find DOC is complying with the Agreement

**7.    How will the lawyers for the youth be paid?**

The parties agree that, under the Civil Rights Attorneys' Fees Award Act, the state will pay the lawyers for the youth for their reasonable attorneys' fees and the costs of the lawsuit. If the parties cannot agree on how much the state should pay the youths' lawyers in fees, the Judge will decide how much the state will pay in fees and costs.

If a Petition for Fees and Costs must be submitted to the Court for a ruling, the Plaintiffs will seek approximately $1 million in fees and costs.

**8.    What are my legal rights and options?**

   a.    **If you agree, do nothing.** If you agree with the Settlement, you do not have to do anything. As a class member, you will get all of the benefits of the improved security practices at LHS/CLS.

   b.    **If you object to the Settlement.** If you think the Settlement is improper or unfair and want to tell the Court why it should not be approved, you must submit an objection in writing. Objections must include:

   i.  The name and number of this lawsuit: *J.J. v Litscher,* Case No. 17-CV-47;

   ii.  The initials of the youth, the full name of the youth's parent or guardian, and current address;

   iii. What exactly you object to and why you object;

   iv. Your signature.

   Mail the objection by _____, 2018 to:

> Settlement Coordinator
> ACLU of Wisconsin Foundation, Inc.
> 207 E. Buffalo St., Suite 325
> Milwaukee, WI 53202

LHS/CLS will give you paper, envelope and a stamp to write the Court.

c.   **You can appear in the lawsuit through your own attorney.** Any youth may obtain an attorney to appear on behalf of the youth in this lawsuit, at his or her own expense.

d.   **Fairness Hearing.** After reviewing your comments, the Court will have a hearing on _____, 2018, at _____a.m. in the Federal District Court in Madison, Wisconsin, to decide whether to approve the Settlement Agreement. If the Judge finds that the Settlement Agreement is fair, adequate and a reasonable compromise, then the Settlement Agreement will become final. If the Judge does not approve the Settlement Agreement, it will be void, and the case will go to trial. However, if that happens, no one can assure that: (a) any decision at trial will be in favor of the youth; (b) any favorable trial decision will be as good as the Settlement Agreement; or (c) any decision after a trial would be upheld on appeal.

## 9.   How do I find out more?

This summary does not cover all terms of the Proposed Settlement. If you want to read a full copy, you may ask the ACLU of Wisconsin to send you one or you may ask to see a copy from your social worker at LHS/CLS.

If you want more information or do not understand this Notice, **contact:**

| | |
|---|---|
| Settlement Coordinator<br>ACLU of Wisconsin Foundation, Inc.<br>207 E. Buffalo St., Suite 325<br>Milwaukee, WI 53202<br><br>Telephone (414) 272-4032. | Karen Lindell<br>JUVENILE LAW CENTER<br>The Philadelphia Building<br>1315 Walnut Street, 4th Floor<br>Philadelphia, PA 19107<br><br>Telephone: (215) 625–0551 |

**You may email questions or objections to** LHSettlement@aclu-wi.org.

**Please do not call the U.S. District Court or the lawyers for the Wisconsin Department of Corrections.**

_____
**Date**

_____
**U.S. District Judge**