**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

J.J., *et. al.*,

                         Plaintiffs,

v.                                             Case No. 17-CV-47

Jon E. Litscher, *et. al.*,

                         Defendants.

---

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL**

---

### INTRODUCTION

Counsel for the Plaintiff Class and Counsel for Defendants jointly submit this memorandum of law in support of the Joint Motion for Preliminary Approval of Class Action Settlement.   For the reasons set out below, the Settlement reached in this case is fair, reasonable and adequate, and therefore the parties request that the Court provide for notice to the Class and set a date for a final approval hearing on the Settlement.

## Procedural History

Plaintiffs filed their complaint against Defendants in this Court on January 23, 2017 under 42 U.S.C. § 1983 for violation of the constitutional rights of youth incarcerated at Lincoln Hills School for Boys and Copper Lake School for Girls (collectively "LHS/CLS") related to practices of solitary confinement, mechanical restraints and pepper spray.   An amended complaint filed on April 19, 2017 added additional allegations of constitutional violations related to strip searches.   Defendants filed answers denying the allegations of the complaints.

After production of documents by the Defendants and certain depositions, the plaintiffs moved for a preliminary injunction on April 19, 2017.  (Dkt. 17) This Court held an evidentiary hearing on the preliminary injunction motion on June 22 and 23, 2017. (Dkt. 61,62) At the conclusion of the hearing the Court ruled that the plaintiffs had shown "more than a reasonable chance" of succeeding on their claims of constitutional violations with respect to the practices of solitary confinement, pepper spray and mechanical restraints.[1]  (Dkt. 67)

Following the Court's ruling and an order identifying parameters for preliminary relief (Dkt. 65), the parties submitted the terms of a preliminary injunction order consistent with the Court's decision.   After review of this submission, the Court entered a preliminary injunction order on July 10, 2017. (Dkt. 71.)

On September 18, 2017, the Court certified a class consisting of "All persons who are now, or in the future will be, confined at Lincoln Hills School for Boys and Copper Lake School for Girls."  (Dkt. 81) The issues certified for class treatment are the constitutionality of defendants' policies and practices with regard to the use of solitary confinement, mechanical restraints, and chemical agents. The Court also appointed the ACLU of Wisconsin Foundation, the Juvenile Law Center, and the law firm of Quarles & Brady LLP as class counsel.

## Settlement Negotiations

The parties began exchanging settlement proposals in September 2017 through in person negotiations, as well as exchanges of correspondence, draft proposals and phone calls. (Muth Decl., ¶ 2).

---

[1] Plaintiffs had not included strip search practices in their motion for a preliminary injunction.

Based on an agreement between the parties, Defendants subsequently engaged Michael Dempsey and Mark Soler, experts in juvenile corrections not previously retained by either party to the litigation, to conduct a review and make recommendations to the parties concerning needed changes related to Defendants' use of solitary confinement, OC spray, mechanical restraints and strip searches.  The parties planned to take into account those recommendations in further settlement negotiations.   The experts conducted their work in the first two months of 2018 and issued a report to counsel for the parties dated February 26, 2018. (Muth Decl., ¶ 3).

While the parties were in the process of negotiating a possible settlement, the Wisconsin legislature passed a law which requires the state to establish new Type 1 secure juvenile correctional facilities and authorizes counties to establish secured residential care centers for children and youth.  Act of Mar. 30, 2018, § 110(2)(a), 2017-2018 Wis. Legis. Serv. 185 (West). Pursuant to the newly enacted legislation, LHS/CLS would be converted to an adult institution and new Type 1 secure facilities will be created. (Muth Decl., ¶ 4).

 The parties continued their negotiations in a mediation conducted before Magistrate Peter Oppeneer with sessions on April 5 and May 8, 2018 as well as telephonic discussions with Magistrate Oppeneer, which ultimately resulted in agreement.  (Muth Decl., ¶ 5).

The parties executed the final version of the settlement on May 25, 2018.  (Muth Decl., ¶ 6).

## Summary of the Terms of Settlement

### A.      Restriction on Room Confinement

The settlement calls for the complete elimination of the punitive use of room confinement within 10 months of approval of the settlement. (Settlement, §III.A.1.c).   Room confinement is

defined as confining a youth alone in room or cell outside of normal sleeping hours. (Settlement, §II.B). Effective upon approval, the settlement limits maximum terms of punitive room confinement to 10 days, declining to a maximum of 3 days seven months after approval, and completely eliminating the punitive use of room confinement after 10 months. (Settlement, §III.A.1).

The settlement limits the use of administrative room confinement to situations when a youth poses a serious risk of imminent physical harm to others, and limits such use to 4 hours, with the possibility of two 4 hour extensions.  (Settlement, §III.A.2). Night time hours when youth are normally sleeping are not included in calculations of the time limits. The limits on administrative confinement commence six months after approval of the settlement.  Id. The parties also agreed on clarifications of the use of room confinement for youth on observation status because of a risk of self harm. (Settlement, §III.A.3).

The settlement provides that minimum "out time" for a youth in confinement must be 30 hours per week and 3.0 hours per day.   (Settlement, §III.A.4.g.vi). Youth in room confinement are to receive educational, rehabilitational, psychological and related services similar to the general population.  (Settlement, §III.A.4.g).  Youth are also to receive time out of their cells for exercise, for social interaction and for their meals.

**B.      Pepper (OC) Spray**

The Defendants shall continue to implement an OC-Spray reduction plan.   The use of OC Spray and other chemical agents is prohibited twelve months after approval of the Settlement. (Settlement, §III.B).

### C.   Mechanical Restraints

Restraints may only be used by specifically trained staff, if those staff determine that restraints are the least restrictive means of addressing an imminent threat of physical harm to self or others, and restraints must be removed immediately when the youth regains control and when the threat of harm or the safety security concern has abated. (Settlement, §III.C.1).  Use of mechanical restraints is limited to handcuffs except when ordered by psychology staff to prevent self-harm, or by security staff to prevent an immediate substantial threat of physical harm to others, or in some situations during transportation.  Mechanical restraints may never be used for punishment or discipline, and youth may never be restrained to a fixed object, such as a bed, wall, desk, or table, unless specifically ordered by psychology staff.  (Settlement, §III.C.1).

Any use of mechanical restraints, except during transportation or for mental health purposes, must be authorized by a Youth Counselor, Youth Counselor Advanced, or supervisor in a living unit.  No youth may be left alone in restraints.  Any use of mechanical restraints in excess of 45 minutes must be approved by the superintendent, security director, or designee and reviewed every 45 minutes thereafter. (Settlement, §III.C.1.g).

### D.   Strip searches

The agreement limits the situations when strip searches of youth may be conducted. Facility staff may not conduct a strip search of any youth unless there is probable cause to believe that the individual youth possesses drugs or weapons that could not be discovered through less intrusive means. (Settlement, §III.D.1). Less intrusive searches, including using a metal detector, pat down, or allowing the youth to change into a tank top or other clothing, must be attempted before a strip search is conducted. (Settlement, §III.D.2).

When a strip search is conducted, staff must ensure that no unintended individuals are able to view the search, including by video or other recording device. Under no circumstance may a youth be strip searched within view of another youth.  Strip searches may only be conducted by individuals of the same gender identity as the youth being searched, unless the search is conducted by a medical professional. Strip searches must be conducted by staff trained in trauma-informed practices. If a youth with a known or suspected mental health diagnosis or history of sexual abuse objects to a strip search, staff must consult with mental health practitioners before conducting the search. (Settlement, §III.D.3).

### E.    Monitor

Under the agreement, Teresa Abreu will be appointed to monitor Defendants' compliance with the terms of the Agreement.  (Settlement, §V.C).  Ms. Abreu's qualifications are set out in her curriculum vitae attached as Exhibit B to the Declaration of R. Timothy Muth.   The Monitor will conduct four site visits during the first calendar year of the Agreement and two site visits per year during the remaining time the Agreement is in place.  In addition to the site visits, the Monitor will have access on request to books, records and reports from LHS/CLS.  The Monitor will prepare a report after each site visit which will be filed with the Court. (Settlement, §V.C.3.e).

The Monitor will also make at least one visit to each new site opened by the Defendants pursuant to 2017 Legislative Act 185 to assure that the new facility is complying with the provisions of this agreement related to room confinement, restraints, strip searches and pepper spray.  (Settlement, §V.C.3.c).

Defendants will pay Monitor's reasonable fees and costs.  (Settlement, §V.C.4).

### G.    Administrative Code Changes

Defendants will make all reasonable efforts to amend the Wisconsin administrative code within six months after entry of the Court's order. (Settlement, §III.H). The amendments will impose restrictions on any juvenile correctional facilities operated by DOC that are consistent with the material terms of this Agreement as they relate to: (1) Room Confinement, (2) OC-Spray and Other Chemical Agents, (3) Mechanical Restraints, (4) Strip Searches, and (5) Observation Status.

### H.    Documentation and Enforcement

The settlement agreement requires Defendants to maintain concurrent documentation and to produce to Class Counsel monthly reports related to the use of pepper spray, room confinement, mechanical restraints and strip searches. (Settlement, §V.D.2). On two days notice, Class Counsel will have access to living areas at LHS/CLS for inspections and to speak to Youth. (Settlement, §V.D.1).

If Class Counsel believe there are violations of the settlement and are unable to resolve their concerns after meeting and conferring with Defendants, Class Counsel may move the Court for appropriate orders to enforce the terms and conditions of the settlement.  (Settlement, §V.D.4).

### F.    Termination

Defendants agree not to move to terminate this agreement until a minimum of three year have passed or they have shut down LHS/CLS.  (Settlement, §V.B).  The agreement may then be terminated under the following conditions:

a.    If Defendants have closed LHS/CLS and have amended the Administrative Code, the agreement terminates after the Monitor has inspected each new Type 1 juvenile facility.

b.    If Defendants have closed LHS/CLS but have not amended the Administrative Code, the agreement terminates after each new Type 1 juvenile facility has been inspected by the Monitor twice and been found to be in compliance with the substantive terms of this Agreement.

c.    If Defendants have not closed LHS/CLS, then the Agreement terminates after each new Type 1 juvenile facility and LHS/CLS has been inspected by the Monitor twice after the first 36 month of the Agreement and been found to be in compliance with the substantive terms of this Agreement.

### I.    Continuing Jurisdiction

The Court will maintain continuing jurisdiction to enforce the terms of the Order incorporating the settlement provisions. (Settlement, §V.A).

## LEGAL ARGUMENT

### A.    The Court Should Preliminarily Approve the Proposed Settlement Agreement

The Settlement Agreement complies with the requirements of Fed. R. Civ. P. 23(e), under which the Court may grant approval of a settlement only after finding that it is "fair, reasonable, and adequate." In determining whether to approve a settlement, the Court considers the following factors: "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 ((7th Cir. 1996)) (internal quotation marks omitted); *see also Smoot v. Wieser Bros. Gen. Contractors, Inc.*, No. 15-CV-424, 2016 WL 1736498, at *5 (W.D. Wis. Apr. 29, 2016). Courts have also considered the

presence of collusion in reaching the settlement and whether the agreement promotes the public interest as relevant factors. *See ACLU v. U.S. Gen. Sers Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002).

The Seventh Circuit points out that "federal courts look with great favor upon the voluntary resolution of litigation through settlement" and in the class action context there is "an overriding public interest in favor of settlement." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The Seventh Circuit has also instructed district courts "to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." and that "the Synfuel/Reynolds evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir., 2017)(citations omitted).

Approval of a proposed settlement under Rule 23 requires two steps. First, the district court conducts a preliminary review of the settlement prior to notice being issued to the class. Second, following notification of the class, the court conducts a fairness hearing at which the opinions of class members may be heard. The court then decides whether the proposed settlement is "fair, reasonable, and adequate." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d at 314.

The purpose of the preliminary review of the settlement is to "determine whether the proposed settlement is "'within the range of possible approval'" and "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314 (quoting Manual for Complex Litigation § 1.46, at

53-55 (1st ed. 1977)). *See also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (same). The standards for obtaining preliminary approval are less stringent than those for obtaining final approval. *In re Ford Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675-76 (D. Kan. 2009). *See also In re Bromine Antitrust Litig.,* 203 F.R.D. 403, 416 (S.D. Ind. 2001) ("[t]he bar is low" for preliminary approval).

The court reviewing the proposed settlement should not make conclusions on the merits of the claims or "second guess" the settlement's terms. *Barnes v. United States*, 89 Fed.Cl. 668, 670 (Fed. Cl. 2009). The settlement agreement should be analyzed in the light most favorable to the agreement as a whole rather than performing a provision-by-provision evaluation. *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996) (citing *Armstrong*, 616 F.2d at 315).

**1.    The Proposed Settlement Offers Relief Commensurate with the Strength of Plaintiffs' Likelihood of Success on the Merits**

In the case at bar, "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement," weighs in favor of approval. *Kaufman v. Am. Express Travel Related Servs. Co.,* 877 F.3d 276, 284 (7th Cir., 2017) (citation omitted). *See also Synfuel Technologies, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Corp. Engine Interchange Litig*., 594 F.2d 1106, 1132 (7th Cir.1979)) (citing this factor as the most important one to consider in the context of final approval of a settlement). While the instant case seeks no monetary damages and thus is not amenable to balancing an "amount offered" against the merits of Plaintiffs' case, it is clear that the scope and breadth of the injunctive relief provided in the Consent Decree is well-balanced against Plaintiffs' likelihood of success on the merits. Even though Plaintiffs believe that the merits of their claims are strong, there is no guarantee that, should they prevail, the relief ordered by the Court would

be substantially greater than the relief provided for by the Consent Decree. *Ruiz v. Johnson*, 154 F. Supp. 2d 975, 981 (S.D. Tex. 2001) (discussing appointment of special master to monitor consent decrees).

Similarly, injunctive cases involving conditions of confinement under section 1983 frequently result in settlements requiring specific changes to policies, as is the case with the Consent Decree. *See, e.g., D.M. v. Terhune*, 67 F. Supp. 2d 401, 404 (D.N.J. 1999); Stipulation of Dismissal of Actions & Order (Dkt. # 115), Valenzuela v. County of Los Angeles, No. 02-9092 (C.D. Cal. Mar. 16, 2007); Settlement Agreement between the United States and the Alameda County Sheriff's Office, DOJ Complaint 204-11-290, February 4, 2010, http://www.ada.gov/alameda_county_sa.html..

The relief provided by the Consent Decree is particularly reasonable given the limits on prospective injunctive relief imposed by the Prison Litigation Reform Act (PLRA), which requires that injunctive relief  should "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs …[and] that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). In the instant case, the Parties agree that the relief set forth in the Consent Decree fully complies with the PLRA's limitations.   Likewise, Defendants have agreed not to seek termination pursuant to 18 U.S.C. § 3626(b)(1)(A), which would otherwise permit Defendants to move to terminate post-judgment relief after as little as two years. In contrast, based on its terms, the relief offered by the Consent Decree will extend until the closure of LHS/CLS, and Defendants have passed a review by the Monitor of new juvenile facilities replacing LHS/CLS

and/or have amended the Administrative Code for the Department of Corrections to incorporate the substantive terms of the Agreement.

### 2.    The Parties Have Conducted Extensive Discovery and Litigation

More than fifteen months have elapsed from the time Plaintiffs filed their Complaint in this action.  During that time, the Defendants produced in discovery more than 21,000 documents concerning incidents and operations at LHS/CLS, and receive updated productions on a bi-monthly basis.   Plaintiffs worked with prominent national experts on solitary confinement and juvenile corrections who testified at the preliminary injunction hearing.    Plaintiffs have conferred frequently with class members about the ongoing conditions at LHS/CLS.  The fully litigated preliminary injunction hearing before the Court speaks to the Parties' respective abilities "to make informed and reasonable assessments of their respective positions." *See Kitson v. Bank of Edwardsville*, No. 08-507-GPM, 2009 WL 3066620, at *3 (S.D. Ill. Sept. 18, 2009).

### 3.    The Proposed Settlement Will Avoid the Substantial Costs, Delay, Risk, and Uncertainty of Additional Litigation

Although the Parties have already litigated this action for more than fifteen months, if the parties were to continue to litigate, years would likely pass before a decision on the merits was reached, relief ordered and implemented, and all appeals exhausted. As currently calendared, the trial of this matter would not commence until November 2018.  The lengthy trial would impose significant costs on the Parties, and post-trial litigation would likely delay the implementation of relief to class members, should they prevail on the merits.   While the preliminary injunction order provides certain relief to the class members, in the interim, the class members will not receive the benefit of the further reductions in the use of room confinement, pepper spray and strip searches provided in the settlement.  Further, the risks associated with further litigation are

substantial. Approval of the Consent Decree will avoid these otherwise inevitable costs, delays, and risks.

**4.      The Proposed Settlement is the Product of Extensive, Arm's-Length Negotiations.**

As discussed supra, the Parties negotiated the substantive terms of the Consent Decree during two mediation sessions with Judge Oppeneer, after obtaining input from independent juvenile corrections experts, and months of written correspondence and telephone calls. Each provision of the Consent Decree is the result of careful, bilateral negotiations among counsel experienced with cases of this nature. The lack of collusion is evidenced by the substantial time, costs, and effort expended by the Parties in pursuit of a final agreement. Pursuant to Fed. R. Civ. P. 23(e)(3), the Plaintiffs and Defendants have no other agreements between them other than the Stipulation for Consent Decree and Permanent Injunction. (Muth Decl., 7).¶

**5.      The Opinion of Competent Counsel Supports Approval of the Consent Decree.**

The Court should consider the representations of counsel experienced in the litigation of cases of the type before the Court. *Great Neck Capital Appreciation Inv. P'ship v. Pricewaterhousecoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). Plaintiffs' counsel includes multiple attorneys experienced in complex class action litigation and cases involving civil liberties issues.  Plaintiffs' counsel have considered myriad factors and believe that the Consent Decree is fair, reasonable, and adequate and will provide substantial benefits to the Class.

**B.**     **The Class Notice and Manner of Dissemination Are Reasonable**

Before a class action may be settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When, as in the case at bar, class members will be bound by a settlement of injunctive claims, notice to the class should include, inter alia, the "essential" terms of the proposed settlement, including attorneys' fees, options and procedures for objecting to the settlement, the date and time of the fairness hearing, and a procedure for making inquiries to class counsel. Manual for Complex Litigation § 21.312, at 295 (4th ed. 2004); *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 232 (S.D. Ill. 2001). A copy of the proposed class notice is attached to the motion.

Notice to the class should "facilitate[] understanding and . . . arouse[] the interest of the reader." *F.C.V. Inc. v. Sterling Nat'l Bank*, 652 F. Supp. 2d 928, 933 (N.D. Ill. 2009). In *F.C.V.*, the notice "was eight pages long, and was simple and explicit in its explanation of the recipients' options and the consequences of those options." *Id*. at 932. This notice was held to have "sufficiently informed the recipients" of their rights and options in the settlement. Id. at 947. The proposed notice meets this standard.

The proposed notice plan also satisfies Rule 23(e) and the requirements of due process. Pursuant to this plan, notice will be distributed to all current youth at LHS/CLS, mailed to their parents or guardians, and provided to incoming youth as part of their orientation process.   It will also be posted throughout LHS/CLS in conspicuous locations in the day space of general population housing units. Copies of both the notice and the Settlement will also be available in the LHS/CLS library and will be made available to youth or their parents or guardians upon request to DOC or Class Counsel.

In similar cases involving prisoners and detainees, courts have held that providing notice by postings in the detention facilities, postings on government websites, and dissemination through organizations that work with class members is sufficient when supplemented by hand delivery for certain subsets of the class, and that individual mailed notice to the entire class is not required. *See, e.g., VanHorn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (holding that flyers posted on the walls at correctional facility was sufficient notice); *Hall v. County of Fresno*, No. 1:11–cv–02047–LJO–BAM , 2015 WL 5916741, at *3, *8 (E.D. Cal. Oct. 7, 2015) (approving notice to prisoner class by posting notice in English and Spanish in all housing units and hand-delivering to prisoners in lockdown and restricted housing units). The parties here do both: notice will be provided individually to youth and their parents or guardians, and will be posted widely at LHS/CLS.  The parties propose that the deadline to issue the notice as described in the Settlement be ten business days after preliminary approval (the "Notice Deadline"), and that class members have 30 days to submit any objections to the settlement (the "Notice Period").

The parties further request that this Court set a Final Approval Hearing as soon as possible after the close of the Notice Period; the parties will file a motion for final approval, responding to any objections, no later than seven days before the Final Approval Hearing.

**C.    Attorney fees**

Class Counsel will seek reasonable attorneys' fees and costs for work performed up to and through the Date of Final Approval of this Agreement. The Parties will attempt to reach an agreement regarding the amount of fees and costs prior to issuing notice to the class. Plaintiffs will seek reasonable attorneys' fees and costs for facilitating and monitoring the implementation of this Agreement for the duration of the Agreement.  If the parties are unable to reach an agreement as to the amount of fees for such monitoring, Plaintiffs shall submit a fee petition to the Court for determination.

The proposed notice now states that Defendants have agreed to "pay the lawyers for the youth for their reasonable attorneys' fees and the costs of the lawsuit." Proposed Notice, §7. The parties will attempt in good faith to reach agreement on the amount of fees and costs to be paid prior to distributing the notice, in which case that amount will be included in the notice. Should the parties reach agreement on a negotiated amount of fees and costs after notice has been issued, they will provide supplemental notice pursuant to Rule 23(e); should they be unable to reach agreement, Plaintiffs will file a fee petition pursuant to Rules 23(h)(1) and 54(d)(2), and notice will be provided pursuant to Rule 23(h)(1).

**CONCLUSION**

The proposed settlement of this class action was the product of months of arms-length, good faith negotiations by the parties.  For the reasons set forth above, the Court should preliminarily approve the settlement and set a date for a final approval hearing to take place after notice to the plaintiff class has been given.

Dated this 1st day of June, 2018.

/s R. Timothy Muth
ACLU OF WISCONSIN FOUNDATION
Laurence J. Dupuis (SBN 2029261)
Karyn L. Rotker (SBN 1007719)
R. Timothy Muth (SBN 1010710)
207 E. Buffalo Street, Suite 325
Milwaukee, WI 53202
Telephone: (414) 272–4032
Facsimile: (414) 272–0182
ldupuis@aclu–wi.org
krotker@aclu–wi.org
tmuth@aclu–wi.org

JUVENILE LAW CENTER
Jessica Feierman
Karen Lindell
Marsha Levick
The Philadelphia Building
1315 Walnut Street, 4th Floor
Philadelphia, PA 19107
Telephone: (215) 625–0551
jfeierman@jlc.org
klindell@jlc.org
mlevick@jlc.org

QUARLES & BRADY LLP
Matthew J. Splitek (SBN 1045592)
Rachel A. Graham (SBN 1069214)
33 East Main Street, Suite 900
Madison, WI 53703
Telephone: (608) 251–5000
matthew.splitek@quarles.com
rachel.graham@quarles.com

Emily L. Stedman (SBN 1095313)
Zachary T. Eastburn (SBN 1094676)
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Telephone: (414) 277–5000
emily.stedman@quarles.com
zachary.eastburn@quarles.com

*Attorneys for Plaintiffs*

17

s/ Samuel C. Hall, Jr.

CRIVELLO CARLSON, S.C.
Samuel C. Hall, Jr., WI Bar No. 1045476
shall@crivellocarlson.com
Benjamin A. Sparks, WI Bar No. 1092405
bsparks@crivellocarlson.com
710 N. Plankinton Ave. Ste. 500
Milwaukee, WI 53203-2404
Tel.: (414) 290-7587
Fax: (414) 271-4438

*Attorneys for Defendants Jon E. Litscher, John D.
Paquin, Wendy A. Peterson, Brian Gustke*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June, 2018, I filed the foregoing Memorandum In Support Of Joint Motion For Preliminary Settlement Approval using the CM/ECF system, which will send electronic notification of such filing to all counsel of record who are ECF participants. I further certify that on said date, paper copies were sent to those indicated as non–registered ECF participants, via First Class, United States mail, postage prepaid.


/s/     R. Timothy Muth